# Illinois Official Reports

## Appellate Court

---

### *People v. Saleh*, 2020 IL App (1st) 172979

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALI SALEH, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-17-2979 |
| Filed | September 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-4544; the Hon. William T. O'Brien, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Elizabeth Cook, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Hall and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Ali Saleh appeals from the second-stage dismissal of his petition for postconviction relief.

¶ 2      Defendant, age 52, was convicted after a bench trial of the aggravated battery of Robert Schmitt, age 33, and sentenced to 30 months of felony probation. The charges stemmed from an altercation between defendant, who was a Chicago taxicab driver, and a group of passengers in his cab who had been drinking on a Saturday night in Wrigleyville. This court affirmed defendant's conviction and sentence on appeal. *People v. Saleh*, 2011 IL App (1st) 100853-U.

¶ 3      Defendant's petition claims that his trial counsel was ineffective for failing to call defendant's dentist in support of defendant's claim of self-defense. Defendant testified at trial that he did not initiate the conflict, that he acted in self-defense, and that Schmitt punched defendant in the back of his head, causing defendant to hit his teeth on the roof of his cab.

¶ 4      For the following reasons we affirm the trial court's second-stage dismissal.

¶ 5      BACKGROUND

¶ 6      I. Pretrial Proceedings Regarding the Dentist

¶ 7      After defendant's pretrial motion for the passengers' credit card records to establish their alcohol consumption and his pretrial motion to quash his arrest were denied, defendant's original attorney moved to withdraw, and a second attorney filed an appearance. It is the effectiveness of this second attorney that defendant placed at issue on this appeal, and we will refer to him as trial counsel.

¶ 8      On January 20, 2009, when trial counsel first appeared in court, he stated that he was retained "very recently," that he had not yet received the file from the prior attorney, but that he wanted "to move the case to trial as rapidly as possible." However, on January 27, 2009, he requested more time in order "to get subpoenas issued." After several more continuances, trial counsel informed the court on September 8, 2009: "I don't have the subpoena I need for [the] dentist, who fixed my client's teeth. I need to be able to get him in." The assistant state's attorney (ASA) replied: "he just informed me of a dentist, and I don't have any information on that."

¶ 9      On September 28, 2009, the following exchange occurred:

> "THE COURT: This is set for a bench trial
>
> TRIAL COUNSEL: Yes, Judge, defense is not ready for trial today. We're having some difficulty with our dentist that we need. I'd like to have a date, so that I could issue a subpoena and make sure he's here."

Also on September 28, 2009, trial counsel filed defendant's answer to discovery, which stated that defendant "intends to call as a witness Dr. M. Salih, [address and phone number], who will testify regarding his treatment of injuries sustained by the [d]efendant at the hands of the complaining witnesses." The answer further stated that defendant "intends to utilize [d]efendant's medical records from Salih Dental Center, and will provide them to the State as soon as they are received."

¶ 10      On October 19, 2009, the ASA informed the trial court:

"Counsel had filed an answer of self-defense and listed a witness, an individual whose name is [Salih]. We attempted to interview that dentist and we received a fax in the office indicating that he's been out of the country for the past three months due to his wife's death. And the individual indicated, 'I tried to look for the records of the patient, the defendant, but could not find them, called the doctor overseas, asked him for it, but, unfortunately, he says he has them in his office which I don't have access to.' "

¶ 11    The ASA stated he was not provided the dentist's return date, and trial counsel asked to set the case for status on November 6, 2009, because: "That way we can see if he's back or know when he will be back." On November 6, trial counsel moved for a trial date of December 17, 2009. After another continuance, the case proceeded to a bench trial on January 11, 2010, with both sides answering that they were ready.

¶ 12                                          II. Trial

¶ 13    At trial, Robert Schmitt, a high school history teacher, testified that his younger sister, Katie Schmitt, visited him in Chicago on Saturday, December 16, 2006, to celebrate her twenty-first birthday. Since Katie shares the same last name as the victim, we will refer to her as Katie and refer to the victim as Schmitt. On December 16, Schmitt, Katie, and Schmitt's then-fiancée and now wife, Carrie Gilson, departed from his apartment at 8 p.m. and proceeded, during the course of the evening, to three different establishments where they consumed both food and alcohol. Schmitt consumed a total of four drinks: two gin-and-tonics and two beers.

¶ 14    Schmitt testified that, shortly after midnight on December 17, 2006, they hailed defendant's yellow taxicab. Schmitt sat behind the front passenger seat, Gilson sat behind the driver, and Katie sat between them. As the cab approached the intersection of Ashland and Belmont Avenues, Katie complained that she felt sick, and Schmitt responded that she would be all right and they were close to his apartment. However, as the cab crossed Ashland Avenue, Katie insisted that it pull over because she was going to be sick. Schmitt asked defendant to pull over, and he did so. When the cab stopped, Schmitt opened the back passenger-side door and exited the cab. Katie moved across the back seat and leaned her body outside of the cab to vomit. Although seated in the back seat, Katie's arms, legs and head were leaning outside of the cab. While standing outside of the cab, Schmitt heard defendant speaking in a heated tone to Gilson, who remained in the cab, but Schmitt could not hear what was said. Katie exited the vehicle and continued vomiting on the sidewalk, approximately six feet from the cab, while Schmitt stood next to her.

¶ 15    Schmitt testified that he heard Gilson and defendant arguing and, then, Gilson yelling: "He hit me, he hit me." Schmitt observed Gilson standing outside the cab, on the driver's side, holding her face, with defendant standing about a foot away from Gilson, facing her. Schmitt ran over and pushed defendant's chest with his open palms, to shove defendant away from Gilson. When pushed, defendant backed up toward the cab door, turned, and then slapped Schmitt across the left side of Schmitt's face with his right hand. Schmitt did not observe a weapon in defendant's hand, and defendant's palm was open.

¶ 16    Schmitt testified that both Gilson and Katie started screaming when they observed blood pouring down Schmitt's face. Schmitt had a 3- to 3½-inch open wound and was losing a significant amount of blood at a fast pace. Defendant drove away, and Gilson called 911. The

police and paramedics arrived, and an ambulance transported Schmitt to a hospital where he received 38 stitches on the right side of his face. Schmitt testified that he had a permanent three-inch scar above his jaw.

¶ 17        Gilson testified that she was also a passenger in defendant's cab. After Schmitt and Katie exited the cab, Gilson remained inside. Defendant shouted at Gilson in English and another language that Gilson should exit his cab. When Gilson told him to "calm down," defendant's tone escalated and he used profanity. As Gilson opened the back driver's-side door to exit the cab, defendant also exited the front driver's-side door. Gilson was standing a foot away from defendant, outside of the cab, when defendant punched her in the jaw. Gilson started screaming, and Schmitt ran between her and defendant and pushed defendant away. Defendant reached back with his right hand and slapped Schmitt on the left side of Schmitt's face. Defendant then quickly drove away. Gilson testified that Schmitt's "face was gaping open and blood was just coming out rapidly" and "dropping on his clothes." Gilson did not observe a weapon in defendant's hand. Gilson testified that she called 911 and gave the dispatcher defendant's taxi number and his physical description. Later that day, she identified defendant at the police station as the person who slapped Schmitt.

¶ 18        Officer Martin Walsh testified that he had been a Chicago police officer for 10 years. On December 17, 2006, he responded to a call of a "person with a knife," and he met Schmitt, Gilson, and Katie standing on the street. Walsh observed that Schmitt had a three-inch gash on his cheek, and Gilson had redness and swelling on the right side of her cheek and a swollen lip. Gilson did not appear under the influence of alcohol as she provided defendant's taxi number and description. Walsh testified that Gilson later identified defendant as the offender at the police station.

¶ 19        Sergeant William Brannigan testified that he had been a police officer for over 15 years. On December 17, 2006, at 12:15 a.m. he received a message that a victim had been stabbed during a dispute with a taxicab driver. Brannigan observed the cab with the reported number, as Brannigan was traveling in a marked police vehicle, and he followed the cab for three blocks. The cab then pulled into a police station parking lot and parked. Defendant exited the cab without being told to do so, and Brannigan asked defendant if he had been involved in a dispute. After defendant replied affirmatively, Brannigan took him into custody. Later, when Brannigan searched the cab, he did not observe or smell vomit and he did not find a weapon.

¶ 20        Detective Michael McDonough testified that he had been a Chicago police officer for 20 years. On February 8, 2007, his sergeant informed him that defendant's case was in misdemeanor court, but that the ASA wanted to upgrade the charge to a felony.[1] McDonough went downstairs to misdemeanor court and waited in the hallway, outside of the courtroom, for defendant to exit. When defendant entered the hallway, McDonough stopped him and stated that the police needed to continue their investigation with him upstairs. They went upstairs, to an interview room, where defendant chose not to waive his constitutional rights and exited the room. However, defendant returned voluntarily, 20 minutes later, to the interview room and knocked on the door. McDonough again advised defendant of his constitutional rights, and defendant again exercised his right not to waive them. Defendant then stated that, when he stopped the cab because Katie was sick, Schmitt and Gilson became angry and screamed for

_____

[1]The felony indictment was filed in this case on March 9, 2007, and indicates that McDonough was the sole witness.

him to take them home. Schmitt then exited and tried to fight defendant, and defendant hit Schmitt with his right hand "very slightly, on the face." Defendant stated that he probably had his keys in his hand when he struck Schmitt. McDonough testified that: "The wound to Mr. Schmitt's face, in my opinion, would be a razor blade, or box cut, or something along those lines."

¶ 21 The State rested, and defendant moved for a directed finding, arguing that the State had failed to prove, beyond a reasonable doubt, that defendant was not acting in self-defense. After the trial court denied the motion, defendant chose to testify on his own behalf.

¶ 22 Defendant testified that he had been a taxi driver for 30 years. Schmitt, Gilson, and Katie hailed his cab at 11:30 p.m. on December 16, 2006. Shortly after, Katie appeared sick. Defendant told them that he wanted to stop and pull the cab over, but Schmitt and Gilson insisted that he continue driving. When defendant observed Katie place her hand on her mouth and vomit into her hand, he pulled the cab over, at the intersection of Belmont and Ashland Avenues. When he parked, he asked Schmitt to make sure Katie finished vomiting outside. Defendant told Gilson that, if they had let him stop earlier, Katie would not have vomited inside his cab. Defendant testified that the "smell," at this point, was "getting bad." Gilson called him insulting names and told him: "Shut up, go back to your country." Defendant asked Gilson to leave but she still wanted him to take them home. When he informed Gilson that he would not drive them further, Gilson continued to call him insulting names and was using profanity.

¶ 23 Defendant testified that, because Gilson appeared unwilling to exit, he opened her door and said: "Please get out of the cab." As Gilson exited, she tried to punch him in the mouth, but he blocked her fist by grabbing her hand. Gilson then screamed: "He hit me, he hit me." Schmitt ran over, and defendant told Schmitt that he had not hit Gilson, but Schmitt hit him anyway. When defendant turned toward his cab, Schmitt punched him with a closed fist on the back of his head, saying: "You're a f***ing terrorist." The blow caused defendant to hit his teeth on the top of his cab hard enough to loosen a tooth. Schmitt and Gilson then simultaneously attacked him, with Gilson grabbing his hair and scratching his neck and Schmitt punching and jabbing his knee against defendant's stomach. Defendant then struck Schmitt's face with his keys in his hand. Defendant drove away and called 911 to report the incident. Defendant pulled into the parking lot of a police station, where he told officers what had happened and they arrested him. On February 8, 2007, when he spoke to Detective McDonough, he told the detective that Gilson had called him insulting names and scratched his throat but he did not inform the detective that Gilson or Schmitt had hit him or that he had injured his teeth during the incident.

¶ 24 After the defense rested, the State called Officer Kevin Finnegan in rebuttal who testified that he had been a Chicago police officer for 14 years. On December 17, 2006, he processed defendant's arrest and booking, and he did not observe any injuries or scratches on defendant. Defendant did not inform Finnegan that he was injured or had been punched, scratched, or had loose teeth. Officer Finnegan asked defendant whether he had any injuries, and defendant indicated that he did not. After listening to closing arguments, the trial judge continued the proceedings for a few days to allow him to review his notes.

¶ 25 On January 15, 2010, the trial judge announced his findings, observing that there was "a question of credibility" between Schmitt and his wife on the one side and defendant on the other. The Schmitts claimed that defendant attacked them, while defendant claimed that he was

attacked first and acted in self-defense. The judge noted that, according to the Schmitts, "the sequence of events" was that (1) defendant punched Gilson, (2) Schmitt pushed defendant against the cab, and (3) defendant struck Schmitt. The judge noted that, in contrast, according to defendant, the sequence of events was that (1) Gilson tried to punch defendant who grabbed her arm and (2) Schmitt ran over and struck defendant in the back of the head, "forcing defendant's face into the cab [and] causing the defendant's teeth to strike the cab and loosening his teeth."

¶ 26    The trial court found that "[t]he testimony and the photos clearly support" the Schmitts' "version." For example, Gilson testified that defendant punched her, and Officer Walsh, the first officer on the scene, testified that he "noted the injury to her." In addition, photos taken of her "clearly" showed her injury, while no injury was noted on defendant. The trial court found that defendant was "the initial aggressor" and that defendant was not injured.

¶ 27    The trial court observed that, "in the defendant's own words," the "smell" in his cab was "bad." "Yet minutes after this confrontation," the officer who placed defendant under arrest did not observe or smell vomit. Although defendant claimed that he called 911 and ended the call when he pulled into the police station, there was no evidence that this 911 call was made. Regarding the claimed dental injury, the trial court observed:

> "Even after the defendant's arrival to the station, he never tells the police that he was attacked by the Schmitt[s]. He claims that he was injured. He had loose teeth and scratches to the neck, but the lock-up keeper Finnegan testified that he had interviewed [defendant], [and] there were no complaints of any injury or illness and he also examined the booking photo which does not depict any injury to [defendant's] neck."

The trial court then found defendant guilty of aggravated battery to Schmitt, who was the only victim mentioned in the indictment.

¶ 28    On February 18, 2010, defendant was sentenced to 30 months of felony probation, and on March 18, 2010, he filed a *pro se* notice of appeal. On appeal, defendant claimed that the trial court erred in finding that he possessed the requisite intent for aggravated battery, where the State failed to prove beyond a reasonable doubt that he knew that slapping Schmitt with an open palm would cause great bodily harm or disfigurement. This court found the claim unpersuasive in light of his admitted "utilization of the keys" (*Saleh*, 2011 IL App (1st) 100853-U, ¶ 43), and we affirmed his conviction on appeal on December 16, 2011 (*Saleh*, 2011 IL App (1st) 100853-U, ¶¶ 44-46).

¶ 29    On June 13, 2012, defendant filed a *pro se* postconviction petition. After the petition advanced to the second stage and counsel was appointed, defendant filed a supplemental petition on July 27, 2016. Defendant alleged that his trial counsel was ineffective for failing to call his dentist at trial to corroborate defendant's testimony that he was injured by Schmitt and acted in self-defense. The supplemental petition further alleged that the dentist "refuses to sign an affidavit that he signed the [attached] letter dated February 6, 2007 that contains his opinion [that defendant's] tooth was traumatized; however, [the dentist] released his treatment records of [defendant] which are attached as evidence of treatment."

¶ 30    The petition was supported by (1) an affidavit by defendant averring that the petition is "true and correct" and "made upon personal knowledge and belief" and (2) an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate by his attorney, which stated, among other things, that she had "interviewed [the dentist], and examined his dental files of [defendant]; however, [the dentist] refused to sign an affidavit."

¶ 31    The petition included a letter apparently signed by the dentist, dated February 6, 2007, on the dental center's letterhead stationery. The letter stated, in relevant part:

> "This is to certify that [defendant] presented to my office [a] few weeks ago with a complaint that 'somebody hit me in the face and losen [*sic*] my teeth in a fight.'
>
> Upon dental exam it was found that tooth #25 (fron[t] lower tooth) has been traumatized and very lose [*sic*], has mobility of +4 which must be extracted. It was also found that some losening [*sic*] on upper front bridge opposing tooth #25."

Another letter, dated June 20, 2007, also apparently signed by the dentist and also on the dental center's letterhead stationery, stated that defendant was "in need" of certain "treatment as a result of the accident he had and been examined for on feb. [*sic*] 6, 2007." The petition included dental records for defendant from 2007 through 2011, with the initial date being February 6, 2007.

¶ 32    On July 14, 2017, the State moved to dismiss. The trial judge who heard the motion was the same trial judge who had presided over defendant's pretrial, trial, and sentencing proceedings, and on October 20, 2017, he found:

> "In reviewing the proceedings and also [I] recall the case, the motion to dismiss is granted. The Court agrees *** that counsel was not ineffective for his decision not to call defendant's dentist as a witness. *** [B]asically it would not have made a difference, in effect, that the testimony by the officer and other witnesses contradicted that kind—those kinds of assertions that [defendant] wanted to make."

On October 27, 2017, defendant filed a timely notice of appeal, and this appeal followed.

¶ 33                                            ANALYSIS
¶ 34                                   I. Post-Conviction Hearing Act
¶ 35    Defendant seeks relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).

¶ 36    The Act provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. It is not a substitute for an appeal but, rather, a collateral proceeding that attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 37    The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 38    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 39    If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as fact finder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary

conflicts. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 40                                     II. Forfeiture

¶ 41    The State argues that defendant's claim of ineffective assistance of trial counsel was forfeited by his failure to raise the issue on direct appeal.

¶ 42    "Issues that were decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are deemed waived." *People v. Enis*, 194 Ill. 2d 361, 375 (2000).

¶ 43    In response, defendant argues that he could not have raised this claim on direct appeal because the dentist's papers, which are now attached to his petition, were not part of the court record. It is well-established that "[w]aiver is not implicated *** where a defendant's post-conviction claim relies on evidence *dehors* the record." *Enis*, 194 Ill. 2d at 375-76. By the record, the Act means " 'the court file of the proceeding *** and any transcripts of such proceeding.' " *People v. Sanders*, 2016 IL 118123, ¶ 43 (quoting 725 ILCS 5/122-2.1(c) (West 2014)); see also *People v. Robinson*, 2020 IL 123849, ¶ 45 ("the trial record"). Thus, we do not find the State's argument persuasive.

¶ 44    In addition, an appellate court always has an independent duty to consider whether it has jurisdiction to review a case, and we find that we do for the reasons discussed below. See 725 ILCS 5/122-1(a) (West 2018) (any person serving a sentence may institute a proceeding under the Act). Since the sentencing occurred on February 18, 2010, it appears that defendant's sentence of 30 months' probation had not yet run before he filed his *pro se* postconviction petition on June 13, 2012, approximately 28 months after his sentencing.[2] In his *pro se* petition, defendant alleged that he was "a couple of months away from successfully completing [his] probation." The State does *not* argue that we lack jurisdiction to hear his petition because his sentence was complete prior to the filing of his *pro se* petition. Thus, we find that we have jurisdiction to hear this appeal.

¶ 45                                 III. The Second Stage

¶ 46    Defendant's petition was dismissed at the second stage. The issue at the second stage is whether the petitioner made a substantial showing such that an evidentiary hearing is warranted. *Sanders*, 2016 IL 118123, ¶ 37. At the second stage, the allegations in the petition are "liberally construed in favor of the petitioner." *Sanders*, 2016 IL 118123, ¶ 31. "All well-pleaded factual allegations must be taken as true ***." *Sanders*, 2016 IL 118123, ¶ 37. "[T]here are no factual issues" at the second stage. *Sanders*, 2016 IL 118123, ¶ 31. "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42.

¶ 47    At the second stage, a court considers only the proofs attached by defendant to his petition and the record of his original trial proceedings. *Sanders*, 2016 IL 118123, ¶¶ 45, 48. The Act specifically requires the petitioner to attach to his petition "affidavits, records, or other evidence supporting the petition's allegations or state why the same are not attached." *Sanders*,

---

[2]Neither the presentencing report nor the trial judge at the sentencing hearing indicated that defendant was to receive any credit for time prior to sentencing. In the case at bar, defendant was out on bond prior to his conviction on January 15, 2010. After the trial court's finding of guilt, the State asked that bond be revoked, but the trial court denied the motion, finding that "[b]ond will stand."

2016 IL 118123, ¶ 45 (citing 725 ILCS 5/122-2 (West 2014)). The court must accept as true both the petition's allegations and its supporting evidence "unless they are positively rebutted by the record of the original trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48.

¶ 48　　When no evidentiary hearing is held, a reviewing court's standard of review is *de novo*. *Sanders*, 2016 IL 118123, ¶ 31 (a second-stage dismissal is reviewed *de novo*). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.

¶ 49　　　　　　　　　　　　IV. Ineffective Assistance of Counsel

¶ 50　　Defendant's sole claim is that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that this deficient performance prejudiced the defendant. *Domagala*, 2013 IL 113688, ¶ 36. Specifically, at the second stage, a defendant must make a substantial showing (1) that counsel's performance was objectively unreasonable under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 36. "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Enis*, 194 Ill. 2d at 377 (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

¶ 51　　"A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Enis*, 194 Ill. 2d at 376.

¶ 52　　Specifically, defendant claims that his counsel was ineffective for failing to call his dentist as a witness. Generally, "decisions concerning whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to the discretion of trial counsel." *Enis*, 194 Ill. 2d at 378. "Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence [citation], and are, therefore, generally immune from claims of ineffective assistance of counsel." *Enis*, 194 Ill. 2d at 378. However, "[t]his is not the case *** where counsel's strategy was so unsound that no meaningful adversarial testing was conducted." *Enis*, 194 Ill. 2d at 378.

¶ 53　　Defendant makes his ineffectiveness claim without a supporting affidavit from the dentist himself. The Act provides that a petition "shall" attach supporting affidavits "or other evidence" "or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). In the case at bar, defendant provided a Rule 651(c) certificate from his attorney explaining why an affidavit from the dentist was not attached, namely, because the dentist refused to sign one.

¶ 54　　Generally, "[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." *Enis*, 194 Ill. 2d at 380. This is because, in the absence of such an affidavit, a reviewing court cannot usually "determine whether the proposed witness could have provided testimony or information favorable to the defendant," and thus, "further review of the claim is unnecessary." *Enis*, 194 Ill. 2d at 380.

¶ 55　　In *Enis*, the defendant failed to provide an affidavit from the witness, and our supreme court stated that "[e]ven if" it considered an "investigation note,[3] in lieu of an affidavit," the defendant's claim would fail. *Enis*, 194 Ill. 2d at 380. This *dicta* in *Enis* suggests that there may be exceptional circumstances where a reviewing court may consider another document "in lieu of an affidavit." *Enis*, 194 Ill. 2d at 380.

¶ 56　　Even if we were to consider the dentist's letters and records, we do not know whether the dentist would testify or in some way verify that defendant's injured teeth could or might be the result of an injury at the time of this incident. Thus, we cannot find that defendant has made a substantial showing of a reasonable probability that, but for trial counsel's decision not to call the dentist, the outcome would have been different.

¶ 57　　In the case at bar, the victim of the aggravated battery charge, namely, Schmitt, admitted that he shoved defendant toward the cab before defendant laid a hand on Schmitt. Defendant argues that the dental records establish that Schmitt's shove was really a punch that was forceful enough to damage defendant's teeth, and that this act, in conjunction with other acts by the Schmitts, was sufficient to justify defendant's acting in self-defense.

¶ 58　　The first problem with this argument is that it ignores the police testimony and other evidence that contradicted defendant's account of events. Defendant denied punching Gilson, but Officer Walsh, the first officer on the scene, testified that Gilson appeared to be injured, with redness and swelling to the right side of her cheek and a swollen lip, and photos of Gilson's face further substantiated her and Walsh's testimony. In addition, defendant testified that the vomit in his cab smelled "bad," but another officer, Sergeant Brannigan, testified that, when he searched the cab shortly after the incident, he did not observe or smell any vomit. Although defendant testified that Gilson scratched his neck while Schmitt punched him, Officer Finnegan, the booking officer, did not observe any injuries or scratches on defendant. The same judge who presided over both defendant's bench trial and postconviction proceedings found that testimony from the dentist would not have made a difference in light of the police testimony and other evidence. Performing a *de novo* review, we agree.

¶ 59　　Second, even if we presumed that the dentist would have testified in accord with the documents that defendant now presents, those documents contradict each other. The first letter, dated February 6, 2007, states: "This is to certify that [defendant] presented to my office few weeks ago [*sic*] with a complaint that 'somebody hit me in the face and lo[o]sen my teeth in a fight.' " However, a second letter, dated June 20, 2007, states: "This is to certif[y] that [defendant] is in need of the following treatment as a result of the accident that he had and been examined for on [F]eb. 6[,] 2007." The first letter mentions a fight, while the second letter mentions an accident. The first letter indicates that defendant "presented" to the dentist's office a few weeks prior to February 6, 2007, while the second letter and all the attached dental charts indicate that the earliest examination date was actually February 6, 2007, almost two months after the offense. By relating these facts, we are not engaging in a credibility determination; rather, without his affidavit, we are left to guess as to which version the dentist would testify to. One version would aid defendant by showing a more immediate outcry, while one would undercut his trial testimony by showing an unexplained gap in time of almost two months.

---

[3]The *Enis* opinion does not specify whether the investigation note was a police note or the note of a defense investigator. *Enis*, 194 Ill. 2d at 379-80 ("an unsigned, unsworn untitled report that defendant identifies as investigation notes from 'Consolidated Investigation Services' ").

¶ 60    Third, it is hard to ignore the fact that the first entries made by the dentist in his dental charts are dated February 6, 2007, almost two months after the altercation, but only two days before defendant appeared in misdemeanor court when the charges were shortly changed to felony charges.

¶ 61    Lastly, we cannot find that trial counsel acted below the norms of professional conduct when he made the apparently strategic decision not to call a witness who so consistently avoided any sworn statement. On September 28, 2009, trial counsel informed the court that he was "having some difficulty with our dentist." On October 19, 2009, the ASA informed the court that the State had also tried to interview the dentist and obtain records from him without success. Defendant's supplemental postconviction petition states that the dentist refused to sign an affidavit confirming that he actually signed the letter, dated February 6, 2007, which mentioned a fight and trauma to a tooth. Postconviction counsel's Rule 651(c) certificate states that she interviewed the dentist but he refused to sign any affidavit. As our supreme court has observed before, uncooperative witnesses do not always make the best witnesses. *E.g.*, *People v. Lewis*, 105 Ill. 2d 226, 248 (1984) (where the ineffectiveness alleged by a postconviction petition is counsel's failure to call certain "uncooperative" witnesses, "the tactical decision not to have them testify was reasonable and could have been in defendant's best interest").

¶ 62    For all the foregoing reasons, we cannot find either (1) that counsel's performance was objectively unreasonable under prevailing professional norms or (2) that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 36.

¶ 63                                   CONCLUSION

¶ 64    For the foregoing reasons, we affirm the trial court's second-stage dismissal of defendant's postconviction petition.

¶ 65    Affirmed.