2022 IL App (1st) 200713-U

No. 1-20-0713

Order filed July 12, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 9459 |
| | ) | |
| SAMUEL WHITE, | ) | The Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of defendant's postconviction petition is affirmed where he failed to make a substantial showing that his trial counsel provided ineffective assistance by failing to call a witness or that his postconviction counsel provided unreasonable assistance by failing to supplement his petition.

¶ 2    Defendant Samuel White appeals from the circuit court's order granting the State's motion to dismiss his *pro se* petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, he contends the circuit court erred in dismissing

his petition, where he made a substantial showing his trial counsel provided ineffective assistance by failing to call a witness who would have testified that she owned the firearm defendant was charged with possessing. In the alternative, defendant argues postconviction counsel provided unreasonable assistance by failing to supplement his petition with a copy of the complaint the same witness filed against the Chicago Police Department (CPD). We affirm.

¶ 3    Following a 2012 bench trial, defendant was found guilty of armed habitual criminal (AHC), armed violence, unlawful use of a weapon by a felon, and possession of a controlled substance. He was sentenced to concurrent terms of 18 years' imprisonment each for one count of AHC and two counts of armed violence. On direct appeal, we vacated his AHC conviction and one armed violence conviction, and remanded for resentencing. *People v. White*, 2015 IL App (1st) 131111. On remand, defendant was sentenced to concurrent prison terms of 18 years for armed violence and 6 years for possession of a controlled substance. On appeal, this court reduced the 6-year sentence to 3 years but otherwise affirmed. *People v. White*, 2018 IL App (1st) 170242-U. As a recitation of the trial evidence is necessary to provide context for defendant's postconviction claim, we reiterate much of the statement of facts from our decision in defendant's direct appeal (*White*, 2015 IL App (1st) 131111, ¶¶ 4-14).

¶ 4    At trial, Officer Brian McDevitt testified that at about 10 p.m. on March 21, 2012, he was working with Officer May and Officer Carey in an unmarked car. At about 10:30 p.m., the officers responded to a call of shots fired at 6535 South California Avenue. No one was in the courtyard at that address but defendant and another man were in the next courtyard over at 6527 South California. No other individuals were in the area. The courtyard adjoined a three-story apartment building and was enclosed with a gate.

¶ 5    McDevitt entered the courtyard and approached the two men with his gun drawn. He saw defendant reach into his waistband, remove a "small silver handgun with light shining from the metal," and walk toward the building's door. Despite seeing a handgun, Officer McDevitt did not immediately inform his partners that defendant was armed. After defendant opened the door to the building and threw the handgun inside, he walked a "few" steps away from the entrance. Officer Carey secured defendant and the other individual together, while Officer McDevitt opened the door to the building.

¶ 6    Inside the building, a second door with a lock separated the hallway from the apartments, although it was possible that the door was not locked. Officer McDevitt retrieved a loaded silver .22–caliber handgun from the hallway floor. No other items were in the area and the handgun looked like the item that defendant removed from his waistband. After securing the weapon, Officer McDevitt performed a custodial search of defendant, which revealed 1 clear plastic bag holding 12 smaller bags of suspect cannabis and another bag holding 6 multicolored pills containing suspect Ecstasy. The parties later stipulated that the substances found on defendant's person contained cannabis, 5–Methoxy–N, N-diisopropyltryptamine, and N–Benzylpiperazine.

¶ 7    Officer McDevitt further testified that, after Mirandizing defendant, defendant told him the gun belonged to him but he had not known he had it "on him." Moreover, defendant said he had heard gunshots but that examining his handgun would confirm that it had not been fired. The individual with defendant was permitted to leave when a search revealed no contraband. Officer McDevitt did not run a check on either man's name and did not know whether the other officers did.

¶ 8     The State then submitted a certified copy of defendant's 1997 conviction for committing first-degree murder and a certified copy of his 2010 conviction for "Class 4 aggravated domestic battery," which this court determined was actually for a Class 4 felony of "Domestic BTRY/Bodily Harm PRI."

¶ 9     Barbara Taylor testified on defendant's behalf that on the night in question, she was with her sister, Fairy Stennis, and her friend, Diane Walton, who were also in court that day. The three women were talking and listening to music with the windows down in Stennis' car, which was parked in front of Walton's apartment building at 6527 South California. Defendant was sitting in a chair in the courtyard and Taylor could hear him searching through music on his phone. Taylor knew defendant through Walton, with whom he had an amorous relationship. Although another man was standing by defendant, Taylor had never seen him before. Taylor never heard gunshots fired.

¶ 10    Suddenly, a car pulled up behind the three women and two police officers exited. The officers ordered defendant and his companion not to move. Taylor then heard over the police radio that gunshots had been reported in the alley of 6535 or 6537 California. When the three women exited their car, Stennis and Walton walked into the courtyard while Taylor remained by the sidewalk. Taylor did not see defendant throw a gun into the hallway. Nor did she see police recover a firearm. The police cuffed defendant's hands behind his back and emptied his pockets, which contained his wallet, his cell phone, and keys. After more officers entered the courtyard, the police apparently entered the building. Walton did not tell officers she lived in the building or that defendant lived with her. Walton argued with one officer who was preventing her from entering

the building. The police then exited the building and announced that they were taking defendant with them.

¶ 11     Stennis testified that the three women sat in Stennis's car talking while defendant, Walton's boyfriend, sat outside. Defendant was playing a game on his iPod but she could not hear any music coming from it because he was too far away. Another man who was near defendant appeared to be singing or rapping. The three women never heard gunshots.

¶ 12     After about an hour, a police car stopped behind Stennis's car. An officer, apparently Officer McDevitt, proceeded into the courtyard and ordered defendant, who was sitting in a chair, not to move. Officer McDevitt's gun was not drawn and Stennis never saw defendant approach the door to the apartment building. Stennis and Walton walked into the courtyard while Taylor remained by the sidewalk. Defendant was then handcuffed to the other man and searched. Stennis never saw any pills on defendant's person. Meanwhile, Stennis heard over the police radio that gunshots had been fired in an alley and the police were looking for a man with a white T-shirt and dreadlocks. Police officers then entered the building. Over Walton's objection, they went inside her apartment. Walton and Stennis followed the officers inside, where the officers threw pillows off Walton's couch. The officers returned outside empty handed, however. Both defendant and the other man were taken to the police station.

¶ 13     Defendant testified that on the night in question, he was visiting Walton. He described her as a "[f]riend, more like a girlfriend but more a friend." He spent time with Walton at her apartment, but then she and her friends went to the store. When they returned, he and Walton acknowledged each other but did not say hello to one another. Defendant did not want to interrupt their "women's talk." During the 45 minutes that the women sat in the car, defendant played a

game on an iPod. Another man, whose name defendant did not know, stood nearby and rapped. Defendant also talked to the man. He did not hear shots fired.

¶ 14    When the police arrived, they told defendant not to move and he complied. He never threw a gun into the hallway and Officer McDevitt found no contraband while searching him. His pockets did contain, however, a key ring including Walton's apartment key, cell phone, lighter, and wallet. Defendant heard over the radio that police were looking for a black man with dreadlocks and a white T-shirt, and that the man was standing on the back porch of a building with a gun. After defendant was arrested, he learned that he was being charged with possessing a firearm and that controlled substances were allegedly found. The police did not tell him where they found the firearm. Walton visited him in jail and kept contact with him through the mail but defendant had not spoken to Stennis or Taylor since his arrest.

¶ 15    Officer Elliot Flagg testified in rebuttal that on the night in question, he responded to a call of shots fired in the 6500 block of South California. There had been multiple calls, some of which were directed toward South California. Officer Flagg found no one in the alley but subsequently observed Officer May, Officer McDevitt, their partner, defendant and another man in the courtyard at 6527 South California. Defendant was already handcuffed at this time. At no time did Officer Flagg see women near the courtyard. Additionally, he never heard a radio transmission describing a man with a white T-shirt and dreadlocks who was alleged to be standing in any particular location. Officer Flagg did not see the police recover anything from the building and did not see a handgun.

¶ 16    Defendant argued in closing that the police officers' account was not credible because he, as an "ex-con," would not possess "guns and drugs," and would not have thrown a gun into the

apartment building's hallways "in plain view of the police." Rather, defendant asserted he was "probably walking to go into that hallway," when the police arrested him, found his keys, and entered Walton's apartment, where they found the "guns and drugs." Defendant argued that the officers then arrested him and said "this was where the guns and drugs were," knowing they could not say it was in Walton's apartment since the apartment did not belong to him.

¶ 17    The trial court found defendant guilty on all counts. The court stated police officers responded to a call of shots fired, saw defendant reach in his waist and throw a "shiny object" into a hallway, and arrested him. The firearm and ammunition were recovered and inventoried, and "illegal narcotics" were recovered from defendant's person.

¶ 18    The court imposed three concurrent sentences of 18 years' imprisonment each for one count of AHC and two counts of armed violence, and merged the remaining counts.

¶ 19    On direct appeal, we vacated defendant's AHC conviction and one armed violence conviction, and remanded for resentencing, finding in part that (1) his prior domestic battery conviction did not constitute a "forcible felony" necessary to sustain his AHC conviction, and (2) the armed violence statute does not authorize multiple armed violence convictions for multiple, simultaneous underlying felonies. *White*, 2015 IL App (1st) 131111. We otherwise affirmed. *Id.*

¶ 20    On remand, defendant was sentenced to concurrent prison terms of 18 years for armed violence and 6 years for possession of a controlled substance. In 2018, this court reduced his 6-year sentence to 3 years and affirmed as modified. *People v. White*, 2018 IL App (1st) 170242-U.

¶ 21    In May 2014, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)), which the circuit court dismissed. Defendant initiated two appeals from the dismissal (appeal numbers 1-14-3799 and 1-

15-0451). We consolidated the appeals and affirmed. *People v. White*, 2017 IL App (1st) 143799-U.

¶ 22    On November 8, 2016, defendant filed the instant *pro se* postconviction petition under the Act, alleging, *inter alia*, that police officers entered Walton's apartment without a search warrant, recovered evidence, and "charge[d] it to" him. Walton filed a complaint against the CPD "for coming into her apartment." She also told defendant's trial counsel that an officer recovered evidence from her apartment and "put it on" defendant. However, counsel failed to call her despite being aware of her "exonerat[ing]" testimony.

¶ 23    Defendant attached to his petition the affidavit of Walton, who averred that police officers arrested defendant while he sat in the courtyard.[1] Walton exited Stennis's vehicle, approached the officers, and asked why they were "messing with" defendant. She then entered her residence to call the officers' supervisor. As she did so, the officers "forced [their] way into [her] house" and "ranshacked [*sic*]" the house without a warrant. They recovered a firearm inside and "placed it on" defendant. Walton "called and filed" a complaint against the officers. However, she was "forced and threaten[ed]" by the officers to "drop the complaint or be placed under arrest for any crime they wanted to place on [her]," and so she could not "pursue" her complaint. Defendant had never pulled anything from his waistband. The handgun was hers; she kept it at home for protection. Defendant's trial counsel told her he would call her as a witness to testify but never did, even though she had attended all of defendant's court dates, including trial.

---

[1]We note that, in the record on appeal, the very bottom of the first page of Walton's affidavit is cut out and not visible. "[I]t is defendant's burden as the appellant to provide a sufficiently complete record on appeal so that this court can be fully informed about the issues." *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 34.

¶ 24    Defendant's postconviction petition was docketed for second-stage proceedings, and defendant was appointed counsel.

¶ 25    On July 10, 2018, defendant's attorney filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), alleging that he "consulted with the petitioner, Samuel White, by phone, mail, electronics [*sic*] means or in person to ascertain his contentions of deprivations of constitutional rights." Counsel alleged he "obtained and examined the record of proceedings at the trial and sentencing in this case." He further certified, "I have not prepared a Supplemental Petition for Post-Conviction Relief as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

¶ 26    On March 26, 2019, the State filed a motion to dismiss the petition, arguing in part that trial counsel's decision not to call Walton as a witness was a reasonable decision where the record "roundly impeaches" her statements. The State also argued it was not clear that Walton had filed a complaint against the CPD, as a complaint would need to be written, signed, and filed with the police department. Walton, however, claimed she had only filed a complaint by phone and could not pursue the complaint once officers threatened her.

¶ 27    In July 2019, defendant filed a *pro se* "motion for *Krankel* hearing," alleging his postconviction counsel never formed a "client and lawyer bond/Relationship," never met him in person, and failed to supplement his petition. Subsequently, defendant's postconviction counsel retired and the court appointed new counsel to represent him during postconviction proceedings.

¶ 28    On November 5, 2019, defendant filed a *pro se* "motion to supplement" his petition with exhibits that he had asked his postconviction counsel to add to his petition. Those exhibits

included, *inter alia*, portions of prior police reports, an indictment, and a response to a Freedom of Information Act request.

¶ 29    On December 17, 2019, prior to the hearing on the State's motion to dismiss defendant's petition, defendant told the court he was moving to "[r]emove" his postconviction counsel because she would not amend his petition to include "exhibits." Defendant's new counsel told the court that defendant's initial postconviction counsel, who had investigated the case and filed the Rule 651(c) certificate, had indicated to her there was no need to supplement the petition. Counsel stated, "I have examined the court file, and I have spoke[n] with [defendant] on at least a couple of occasions," and defendant's initial postconviction counsel "was correct in his assessment." Defendant withdrew his motion to withdraw his attorney. However, at a subsequent hearing, he told the court he wanted to proceed *pro se*. After being admonished, he elected to represent himself during the hearing on the State's motion to dismiss.

¶ 30    At the hearing, the State added that defendant failed to attach any supporting documents supporting his claim that Walton had filed a complaint with the CPD, and even had it been filed, it would not have "established anything" at trial.

¶ 31    Defendant argued there was a "second suspect" at the scene, but the police did not take his name and he was "let go." He claimed that McDevitt completed two separate case reports: one that said he never recovered a weapon and one that said he recovered "evidence" belonging to a person named Valadez. Defendant claimed evidence inventory sheets showed that the inventory numbers of the evidence he was charged with possessing matched the inventory numbers of evidence belonging to Valadez. The court asked if Walton's address was his house, and defendant responded, "I stayed there. My state ID and mail."

¶ 32    On February 25, 2020, the circuit court granted the State's motion to dismiss. In its written order, the court found, in relevant part, that Walton's affidavit was "mostly cumulative" of other testimony presented at trial and was "refuted" by testimony that no women were at the scene. It also noted Stennis's testimony that police emerged empty handed from Walton's apartment. The court also stated that counsel's decisions regarding the evidence to present at trial were matters of trial strategy, which were generally immune from ineffective assistance claims.

¶ 33    On appeal, defendant first argues that the trial court erred in dismissing his postconviction petition, where he made a substantial showing that his trial counsel provided ineffective assistance by failing to call Walton to testify.

¶ 34    The Act provides a three-stage method for persons under criminal sentence to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). Defendant's petition was dismissed at the second stage of proceedings, in which counsel is appointed to represent the defendant if necessary, and the State is permitted to file responsive pleadings. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage of postconviction proceedings, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* at 246. "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The second stage of postconviction review tests the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 35    "The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or

credibility determinations," as such determinations are made during the evidentiary third stage of postconviction proceedings. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). "An evidentiary hearing is only required when the allegations of the petition, supported by the trial record and accompanying affidavits, make a substantial showing of a violation of a constitutional right." *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 31. We review *de novo* the circuit court's second-stage dismissal of a postconviction petition. *Pendleton*, 223 Ill. 2d at 473.

¶ 36    Under the sixth amendment to the United States Constitution (U.S. Const., amend. VI), a criminal defendant is guaranteed the right to effective assistance of counsel. *People v. Cole*, 2017 IL 120997, ¶ 22. To prevail on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must demonstrate both "that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 19. During second-stage postconviction proceedings, the defendant must make "(1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. White*, 2021 IL App (1st) 170903, ¶ 35 (citing *Domagala*, 2013 IL 113688, ¶ 36). Because a defendant must satisfy both prongs of the *Strickland* test, failure to establish either one is fatal to the claim. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010).

¶ 37    To establish the deficient performance prong, a defendant must show that counsel's performance "was so inadequate that counsel was not functioning as the counsel guaranteed by the sixth amendment and, also, must overcome the strong presumption that any challenged action or

inaction may have been the product of sound trial strategy." (Internal quotation marks omitted.) *People v. Dupree*, 2018 IL 122307, ¶ 44. This is a "high bar to clear," as matters of trial strategy are generally immune from ineffective assistance claims. *Id.*

¶ 38    "[T]he decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant," and "such decisions will not ordinarily support a claim of ineffective assistance of counsel." *People v. Peterson*, 2017 IL 120331, ¶ 80. Even a mistake in trial strategy will not alone render representation constitutionally defective unless counsel's trial strategy "is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case." (Internal quotation marks omitted.) *Id.* Defense counsel need not call a particular witness if he reasonably believes that "under the circumstances the individual's testimony is unreliable or would likely have been harmful to the defendant." *People v. Flores*, 128 Ill. 2d 66, 106 (1989).

¶ 39    As an initial matter, the State argues that defendant forfeited this issue, as he did not raise it on direct appeal despite knowing of Walton's proffered testimony. However, as defendant's trial counsel did not call Walton to testify, her proposed testimony was not included in the original appellate record and defendant's claim could not have been considered on direct appeal. See *People v. Elder*, 73 Ill. App. 3d 192, 196 (1979) (on direct appeal from a criminal conviction, our review is limited to what appears in the record). Accordingly, because defendant could not have raised this issue on direct appeal, we relax the doctrine of forfeiture and proceed to the merits. *People v. English*, 2013 IL 112890, ¶ 22.

¶ 40    We find defendant failed to make a substantial showing that trial counsel provided ineffective assistance, as he has not shown counsel's decision not to call Walton was "so unsound

that he entirely fails to conduct meaningful adversarial testing of the State's case." (Internal quotation marks omitted.) *Peterson*, 2017 IL 120331, ¶ 80.

¶ 41    At trial, Officer McDevitt testified that he responded to a call that shots had been fired and saw defendant and another man in an apartment complex's courtyard. There were no other people present in the area. As the officers approached the two men, defendant threw a shiny handgun into an apartment building. Officer McDevitt then recovered a silver handgun, which looked like the item he saw defendant throw, from the hallway floor of that building. He next searched defendant and recovered bags containing controlled substances. Defendant told McDevitt that the firearm was his, but he did not know the firearm was on his person. Officer Flagg testified there were no women at the scene of defendant's arrest.

¶ 42    Defendant's trial counsel called multiple witnesses to testify on defendant's behalf. Taylor testified that Walton lived in the apartment building and was in an amorous relationship with defendant. Taylor stated defendant never threw a handgun into the building and the officers would not allow Walton to enter the building. Stennis, on the other hand, testified that she and Walton followed officers into Walton's apartment in the building, where the officers threw pillows off Walton's couch but ultimately did not leave the apartment with anything. Defendant provided a third version of the events, testifying that the officers approached him, searched him, and arrested him despite finding "nothing illegal." He offered no testimony that any officers entered Walton's building or apartment and testified he did not know the police found a firearm until at the police station, and the police did not tell him where they found the firearm. Defendant testified Walton was "more like a girlfriend," visited him in jail, and stayed in touch with him via mail. In closing

argument, defense counsel asserted that the police officers had actually found the contraband in Walton's apartment and stated they had recovered it from defendant.

¶ 43    Defendant now asserts that trial counsel should have presented testimony from Walton. He claims Walton would have testified that after he was arrested, she entered her apartment to call the officers' supervisor, but the officers "forced" themselves inside her apartment, recovered a firearm, and "placed it on" defendant.

¶ 44    The record establishes counsel's decision not to call Walton to testify was a matter of trial strategy. Defendant's testimony that Walton was "more like a girlfriend," visited him in jail, and kept in touch via mail, taken with Taylor's testimony that defendant and Walton were in an amorous relationship, establishes that Walton was in a close relationship with defendant at the time of the incident and thereafter. It is reasonable trial strategy for counsel to forgo presenting a witness close to the defendant due to the obvious bias in favor of defendant, where the testimony will be accorded little weight. See *People v. Lacy*, 407 Ill. App. 3d 442, 466 (2011) (counsel was not ineffective for failing to call the defendant's relative as a witness, as her relation to the defendant could have caused the trier of fact to afford her testimony less weight).

¶ 45    Further, Walton's affidavit shows her testimony only would have presented the trial court with a version of events inconsistent with the accounts provided by the other defense witnesses. Namely, her proposed testimony that she went into her apartment and was followed by police who pushed their way in contradicts Taylor's testimony that police would not let Walton into the apartment building and Stennis's testimony that she and Walton followed police into the apartment. Her proposed testimony that defendant was framed with a firearm found in her apartment would have contradicted the other defense witnesses' testimony that nothing was

recovered from the apartment or building.[2] Ultimately, Walton's testimony that she was present when police recovered her firearm in her apartment undermined the credibility of the other defense witnesses. As such, trial counsel's decision not to call Walton was clearly a matter of sound trial strategy, as the testimony would have only raised more doubts as to the accounts of defendant's witnesses that no contraband was recovered from defendant or the apartment building.

¶ 46    Defendant argues that, in dismissing his petition, the court improperly based its findings on credibility determinations when it noted that Walton's testimony was "mostly cumulative" of his other witnesses and was "refuted" by the State's testimony that no women were present during his arrest. However, the record does not reflect that the circuit court made any credibility determinations in reaching its conclusion. Rather, the court only observed that Walton's testimony would not have added much to the evidence at trial such that counsel was not ineffective for failing to call her as a witness. Even had the circuit court made any credibility findings, our review is *de novo*, and so we show no deference to the postconviction court's judgment or reasoning. See *People v. Johnson*, 2021 IL 125738, ¶ 28. We may affirm the second-stage dismissal of a postconviction petition for any reason apparent from the record regardless of the lower court's rationale. *People v. Hopkins*, 2020 IL App (3d) 170253, ¶ 15; see *People v. Saleh*, 2020 IL App (1st) 172979, ¶ 62 (affirming the second-stage dismissal of a petition where trial counsel's decision not to call a witness was not objectively unreasonable).

¶ 47    In sum, trial counsel's decision not to call Walton to testify was not "so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case" and thus does not

---

[2]Given Walton's statement that she was "forced and threaten[ed]" by officers to "drop the complaint or be placed under arrest for any crime they wanted *to place on* [her]," we interpret her statement that police recovered her handgun from her apartment and "placed it on" defendant to mean they framed him with it.

amount to deficient performance. (Internal quotation marks omitted.) *Peterson*, 2017 IL 120331, ¶ 80; see also *People v. Ashford*, 121 Ill. 2d 55, 74-75 (1988) (trial counsel's decision to call a particular witness is a matter of trial strategy where the individual's testimony would likely have harmed the defendant). Because defendant has failed to satisfy one of the two prongs of the *Strickland* test, his ineffective assistance claim must fail. *Clendenin*, 238 Ill. 2d at 317-18. Accordingly, we find the circuit court properly dismissed his petition. *Dupree*, 2018 IL 122307, ¶ 40 (a petition may be properly dismissed at the second stage where the defendant raises an ineffective assistance claim based on trial counsel's failure to call a witness to testify).

¶ 48    Defendant argues, alternatively, that his postconviction counsel provided unreasonable assistance by failing to supplement his petition with Walton's alleged complaint against the officers.

¶ 49    There is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. " '[T]he right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the [Act].' " *People v. Cotto*, 2016 IL 119006, ¶ 29 (quoting *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)). Our supreme court has therefore concluded that the Act only guarantees a petitioner the "reasonable" assistance of counsel. (Internal quotation marks omitted.) *Hardin*, 217 Ill. 2d at 299.

¶ 50    Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) ensures "that all indigents are provided proper representation when presenting claims of constitutional deprivation under the [Act]." (Internal quotation marks omitted.) *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). Rule 651(c) provides that a defendant's postconviction counsel may file a certificate to support a showing that,

as required by the rule, the attorney (1) "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "has examined the record of the proceedings at the trial"; and (3) "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). A 651(c) certificate creates a rebuttal presumption that postconviction counsel provided reasonable assistance. *People v. Custer*, 2019 IL 123339, ¶ 32. The defendant bears the burden of overcoming that presumption by "demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 51    " 'Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings,' Rule 651(c) 'sharply limits the requisite duties of postconviction counsel.' " *People v. Woods*, 2020 IL App (1st) 162751, ¶ 98 (quoting *Custer*, 2019 IL 123339, ¶ 32). Postconviction counsel is obligated under Rule 651(c) to attempt to obtain affidavits from witnesses identified in the postconviction petition "for the purpose of shaping the allegations in the post-conviction petition into appropriate legal form." *People v. Johnson*, 154 Ill. 2d 227, 247 (1993). However, counsel is "under no obligation to actively search for sources outside the record that might support general claims raised in a post-conviction petition," and is not obligated "to engage in a generalized fishing expedition in search of support for claims raised in a petition." *Id.* at 247-48. We review *de novo* whether postconviction counsel complied with Rule 651(c), which is also the standard to review the second-stage dismissal of a postconviction petition. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 52 Here, defendant's first postconviction counsel filed a Rule 651(c) certificate stating that he had consulted with defendant, reviewed defendant's case, and concluded the petition adequately set forth defendant's claims. Thus, there was a rebuttable presumption that defendant's first postconviction counsel complied with Rule 651(c) and provided reasonable assistance in determining no supplements to defendant's petition were necessary. See *Custer*, 2019 IL 123339, ¶ 32; see also *Woods*, 2020 IL App (1st) 162751, ¶ 101 (counsel's statement to the court that he had " 'looked through,' " the record, exhibits, and transcript left "no doubt that counsel complied with Rule 651(c)'s requirement").

¶ 53 After the State filed its motion to dismiss, defendant then had the benefit of a second postconviction counsel when his first counsel retired. The presumption created by first postconviction counsel's Rule 651(c) certificate carried over to his second counsel. *People v. Smith*, 2022 IL 126940, ¶¶ 29-32. Further, second counsel informed the court she "examined the record of proceedings at the trial and sentencing in this case," and agreed with initial counsel that defendant's petition adequately stated his claims. We also note that defendant then chose to represent himself at the hearing on the State's motion to dismiss his petition and also filed a *pro se* motion to supplement his petition with several exhibits. See *People v. Simpson*, 204 Ill. 2d 536, 562 (2001) ("The right of self-representation does not carry with it a corresponding right to legal assistance; one choosing to represent himself must be prepared to do just that).

¶ 54 In this court, defendant asserts that his postconviction counsels provided unreasonable assistance by failing to supplement his petition with Walton's alleged complaint against the CPD.

¶ 55 However, Walton's own affidavit suggests the complaint may have never been filed. As mentioned, Walton did not aver that she filed a written complaint against the CPD such that

counsel could have supplemented defendant's petition with an actual document. Rather, she averred that she "called and filed" a complaint against the officers, but could not pursue it after officers threatened her. Moreover, when defendant attempted to supplement his petition with additional exhibits in response to the motion to dismiss, Walton's alleged complaint was not among those exhibits. Even further, neither defendant's petition nor Walton's affidavit explains exactly what the complaint stated or what it would establish. Although defendant's petition alleges that Walton filed the complaint against the CPD "for coming into her apartment," even Walton does not state this in her affidavit. Thus, it is not clear that Walton's alleged complaint would have supported any claim in defendant's petition. Accordingly, defendant has failed to show postconviction counsel provided unreasonable assistance by not supplementing his petition with Walton's complaint against the CPD. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 57    Affirmed.